United States District Court
District of Massachusetts

```
                                    )
RAPID PHARMACEUTICALS AG,           )
                                    )
          Plaintiff,                )
                                    )
          v.                        )     Civil Action No.
                                    )     15-13161-NMG
GAYTRI KACHROO and                  )
ARISE BIOPHARMA, INC.,              )
                                    )
          Defendants.               )
                                    )
```

MEMORANDUM & ORDER

GORTON, J.

## I.   Introduction

This action was brought by Rapid Pharmaceuticals AG ("Rapid AG") against Gaytri Kachroo ("Kachroo"), the former Chief Executive Officer, General Counsel and Chairman of the Board of Rapid AG, and her newer company, Arise Biopharma, Inc. ("Arise"). In its complaint, Rapid AG alleges that Kachroo has attempted to strip the company of its core assets, including intellectual property and third party contracts, and transfer them to Arise. The complaint alleges six causes of action, including claims for intentional interference with contractual relations, intentional interference with advantageous business relationships and breach of fiduciary duty.

Pending before the Court is plaintiff's motion for a

-1-

preliminary injunction to enjoin defendants: 1) from interfering with Rapid AG's contractual and business relationships, 2) from transferring Rapid AG's property to Arise and 3) to reinstate to Rapid AG any rights, contracts, relationships or other property already transferred to or misappropriated by Kachroo and/or Arise.

Also pending is defendants' motion to stay the proceedings in this case in deference to defendant's pending case in Switzerland to determine the legitimacy of Rapid AG's sitting Board of Directors.  For the reasons that follow, the motion to stay will be denied and the motion for a preliminary injunction will be allowed, in part, and denied, in part.

III. **Background and Procedural History**

A.    **The Formation and Change of Governance of Rapid AG**

Rapid AG is a corporation organized under the laws of Switzerland with its principal place of business in Baar, Switzerland.  It was founded in 2007 by researchers Dr. Candace Pert ("Pert") and Dr. Michael Ruff ("Ruff") along with a businessman named Michael Laznicka.

Rapid researches and develops drugs based on the compound Peptide-T.  Currently, the company's most important project involves testing the potential use of Peptide-T as a drug to treat Progressive Multifocal Leukoencephalopathy ("PML"), a degenerative brain disease for which no other treatment has ever

been found.  Rapid AG claims that it acquired a patent and other rights to perform work on Peptide-T through a Data Transfer Agreement with Merribeth Adams ("Adams") and Jeffrey Galpin ("Galpin") and their associated entities Advanced Immuni-T and Peptide-T Holdings, Inc., in December, 2013.

Gayle Kachroo ("Kachroo"), an attorney based in Cambridge, Massachusetts, served as the Chief Executive Officer, General Counsel and Chairman of the Board of Rapid AG beginning in August, 2012.  Kachroo is also a shareholder in Rapid AG.  Rapid AG contends that during the time she was a director and officer of the company, Kachroo executed a complicated scheme to gain further control over and ownership of Rapid AG by transferring the company's assets to Arise, a new company that she formed.  According to Rapid AG, Kachroo concocted a story about Dr. Ruff's patent fraud in an attempt to convince the Rapid AG Board of Directors at a March, 2015 meeting that the company needed to undergo liquidation and "restructuring" in order to free the company from the taint of the alleged fraud.

At that meeting, Kachroo provided the Board with copies of a "Multilateral Settlement Agreement" that was intended to rescind the Data Transfer Agreement, transfer intellectual property rights back to Adams and Galpin and license patent rights to Arise.  At that time, Rapid AG had also incurred significant corporate debt, and an internal "creditors

committee" had been convened to work with creditors to subordinate and reduce the company's debt in order to avoid bankruptcy.  Rather than following the plan that the committee proposed, however, Kachroo recommended to the Board that the company should file a bankruptcy petition in Switzerland.

According to Rapid AG, the Board approved neither the Multilateral Settlement Agreement nor a liquidation of the company's assets.  Moreover, the shareholders declined to approve a liquidation, which is required by both the law of Switzerland and Rapid AG's Articles of Association.

On June 15, 2015, Kachroo filed a petition for the voluntary bankruptcy of Rapid AG in Switzerland.  She and the rest of the sitting Board then resigned as directors and officers of the company although the reason for such resignations is unexplained.  On July 2, 2015 the bankruptcy was suspended and Rapid AG was allowed to resume operations under Swiss law.  The next day Rapid AG held a shareholder meeting and elected a new Board of Directors, which promptly brought this lawsuit.

### B. Rapid AG's Current Research

Rapid AG is currently in the process of working with the U.S. Food and Drug Administration ("FDA") to gain approval to perform clinical trials using Peptide-T for the treatment of PML.  In December, 2014 and January, 2015 the FDA sent Rapid AG

-4-

requests for additional data that the agency requires before it can allow Rapid AG to begin clinical trials.  Rapid AG had contracted with several outside vendors to conduct the work needed in order to generate the required data.

Rapid AG claims, however, that those vendors have since been contacted by Kachroo and told that Rapid AG's contracts have been assigned to Arise.  Several of the vendors have now suspended their work and refuse to communicate with Rapid AG. The FDA has made frequent inquiries of the company's chief regulatory officer about the requested data and Rapid AG asserts that its ability to obtain approval to begin Peptide-T clinical trials is now in jeopardy.

### C.   Actions Taken in Switzerland

Since Kachroo attempted to put Rapid AG into bankruptcy in Switzerland and resigned her position on the Board, she has filed a series of actions in the Swiss courts contesting the validity of the election of the current Board of Directors.  She contends that the election of the current Board was tainted by several procedural defects which render it invalid.  She further avers that if a valid election were to be held now, she would be reinstated to the Board.

On August 5, 2015 Kachroo filed a "request for conciliation" in a Swiss court, which is a prerequisite for her right to file a complaint for permanent relief.  The request was

granted and, on August 10, 2015, Kachroo filed a request for ex parte provisional relief and interim measures, alleging that the new Board of Directors of Rapid AG was not legally constituted and requesting reinstatement of the former board, including Kachroo herself.  The Swiss court denied her request for ex parte relief on September 3, 2015.  On September 16, 2015 the request for interim measures was dismissed due to Kachroo's failure to pay the required court fees.  On October 12, 2015, Kachroo filed both a second request for provisional measures and a request for permanent relief.

In their request for a stay of proceedings, defendants submit that this Court should defer to the proceedings in Switzerland because the claim at issue there, i.e. the alleged illegitimacy of the sitting Board of Directors, has been pled as an affirmative defense in this case.

### D.   **Procedural History of This Case**

Plaintiff filed its complaint in this case on August 14, 2015.  On October 14, 2015 plaintiff filed the pending motion for a preliminary injunction.  Defendants responded with the pending motion to stay the proceedings the following day.

### IV.  **Defendants' Motion to Stay Proceedings**

Defendants seek to stay the proceedings in this case, including the Court's consideration of plaintiff's motion for a preliminary injunction, during the pendency of the Swiss action

-6-

to determine the legitimacy of Rapid AG's sitting Board of Directors.   Kachroo claims that because the current Board was not properly constituted it has no authority to bring the action pending before this Court on behalf of Rapid AG.   She further proclaims that if the Swiss court finds in her favor and deposes the current Board, she will be restored to the Board and will initiate a voluntary dismissal of this case.   Thus the decision of the court in Switzerland would purportedly be dispositive of this case.

### A.   Legal Standard

Federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 15 (1983). Nevertheless, in Colorado River Water Conservation Dist. v. United States, the United States Supreme Court held that under some circumstances when parallel actions are pending in both a state and a federal court it is appropriate for the federal court to abstain in deference to the state action.   424 U.S. 800, 817 (1976).   The Court emphasized, however, that this form of deference is very limited and only appropriate in "extraordinary" circumstances. See id.; see also Currie v. Grp. Ins. Comm'n, 290 F.3d 1, 10 (1st Cir. 2002).

Lower courts have extended this form of abstention to circumstances in which the parallel action is pending in a

foreign court rather than a state court, but neither the U.S. Supreme Court nor the U.S. Court of Appeals for the First Circuit have expounded standards for the use of such discretion. In Goldhammer v. Dunkin' Donuts, Inc., another session of the District of Massachusetts set forth a prudent list of factors for courts to balance under such circumstances:

> 1) similarity of parties and issues involved in the foreign litigation,
>
> 2) the promotion of judicial efficiency,
>
> 3) adequacy of relief available in the alternative forum,
>
> 4) issues of fairness to and convenience of the parties, counsel and witnesses,
>
> 5) the possibility of prejudice to any of the parties, and
>
> 6) the temporal sequence of the filing of the actions.

59 F.Supp.2d 248, 252-53 (D. Mass. 1999) (Saris, J.).  As that session of this Court noted, a court facing concurrent international jurisdiction must be concerned with

> demonstrating a proper level of respect for the acts of other sovereign nations, ensuring fairness to litigants and efficiently using scarce resources.

Id. at 253.

### B. Analysis

This case does not present an "extraordinary" circumstance warranting abstention during the pendency of the ongoing action in Switzerland.  An analysis of the factors outlined in

Goldhammer demonstrates that a stay is not necessary to promote justice or judicial efficiency.

The first factor, the similarity of the parties and issues involved in the two cases, provides temporary support for defendants' request.  Both Rapid AG and Kachroo are parties to the Swiss action, although Arise, Kachroo's new company, is not. Furthermore, the action in Switzerland will determine the legitimacy of the sitting Board of Directors which defendants have raised as an affirmative defense in this case.  That action will not, however, address any of Rapid AG's tort and contract-related claims against Kachroo and Arise.  Thus the two cases are not parallel proceedings, unlike the proceedings in Goldhammer.

Some courts have found this to be a bar to Colorado River abstention, at least in the context of parallel state and federal proceedings. See, e.g., Ryan v. Johnson, 115 F.3d 193, 196 (3d Cir. 1997).  Other courts have, however, granted a stay in deference to foreign proceedings when the foreign proceedings were not parallel but were "instructive on the ultimate resolution" of the stayed case. Tarazi v. Truehope, Inc., 958 F.Supp.2d, 428, 435 (S.D.N.Y. 2013); accord Ole Media Mgmt., L.P. v. EMI April Music, Inc., 2013 U.S. Dist. LEXIS 82073, at *12 (S.D.N.Y. June 11, 2013).  Because defendants have requested a stay rather than dismissal of the pending proceeding, the fact

that this case involves parties and claims absent from the Swiss action is not dispositive.

The second factor, judicial efficiency, is also moderately supportive of defendants' request for a stay.  Because Rapid AG is a Swiss corporation, it is fitting that the question of whether the Board is legitimately constituted should be decided pursuant to Swiss law by a Swiss court.  The issue before the court in Switzerland is also an affirmative defense in this case and thus it is possible both courts may be called upon to decide the same issue and decide it differently.  That would not serve the interest of comity but such a result is unlikely given defendants' estimate that the court in Switzerland will render its opinion relatively soon.

The remaining factors do not, however, support a stay.  The relief available in the Swiss forum is inadequate because plaintiff's tort and contract claims are not pending there and could not be heard in that action.  Further, if plaintiff were to file a separate lawsuit to pursue those claims in Switzerland, injunctive relief would not be available.  Given that defendants have requested a stay rather than dismissal, this factor once again is not dispositive.  Nonetheless, because defendants seek to stay this Court's decision on plaintiff's

motion for a preliminary injunction, this factor carries substantial weight.

The fourth factor, fairness to and convenience of the parties, also weighs against the defendants.  While Rapid AG is organized under Swiss law, Kachroo is a citizen of Cambridge, Massachusetts and both Rapid AG and Arise have offices in that city.  Thus this Court is the most geographically convenient forum for the parties as a whole.

The fifth factor, the possibility of prejudice to any of the parties, also disfavors a stay.  Rapid AG alleges that Kachroo has interfered with the company's contracts, misappropriated documents and effectively interrupted the company's research on Peptide-T.  Therefore Rapid AG would be significantly prejudiced if a stay were imposed before the Court rules on plaintiff's motion for a preliminary injunction.

Finally, the sixth factor, the temporal sequence of the filing of the actions, does not justify a stay.  While the first procedural step of the Swiss action was instituted nine days before this case was filed, Kachroo did not initiate her pending requests for interim and permanent relief until almost two months after Rapid AG filed the complaint in this case.  Because defendants are unable to establish that this case presents the kind of "extraordinary" circumstances that demand a stay of proceedings, their motion will be denied.

-11-

## V.   <u>Plaintiff's Motion for a Preliminary Injunction</u>

Plaintiff seeks a preliminary injunction to enjoin defendants 1) from interfering with Rapid AG's contractual and business relationships, 2) from transferring Rapid AG's property to Arise and 3) to reinstate to Rapid AG any rights, contracts, relationships or other property already transferred to or misappropriated by Kachroo and/or Arise.  Rapid AG bases its request on the first and third claims of its complaint which allege intentional interference with contractual and advantageous business relationships and breach of fiduciary duty.  For the reasons that follow, the motion will be allowed, in part, and defendants will be enjoined from interfering with contracts maintained by Rapid AG in furtherance of its IND application.

### A.   Legal Standard

In order to procure a preliminary injunction, the moving party must establish 1) a reasonable likelihood of success on the merits, 2) the potential for irreparable harm if the injunction is withheld, 3) a favorable balance of hardships and 4) a positive effect on the public interest. <u>Jean</u> v. <u>Mass. State Police</u>, 492 F.3d 24, 26-27 (1st Cir. 2007).  Out of these factors, the likelihood of success on the merits "normally weighs heaviest on the decisional scales." <u>Coquico, Inc.</u> v. <u>Rodriguez-Miranda</u>, 562 F.3d 62, 66 (1st Cir. 2009).

The Court may accept as true "well-pleaded allegations [in the complaint] and uncontroverted affidavits." Rohm & Haas Elec. Materials, LLC v. Elec. Circuits, 759 F. Supp. 2d 110, 114, n.2 (D. Mass. 2010) (quoting Elrod v. Burns, 427 U.S. 347, 350, n.1 (1976)). The Court may also rely on otherwise inadmissible evidence, including hearsay, in deciding a motion for preliminary injunction. See Asseo v. Pan American Grain Co., Inc., 805 F.2d 23, 26 (1st Cir. 1986).

**B.   Application**

  **1.   Likelihood of Success**

    **a.   Intentional Interference with a Contractual Relationship**

To show intentional interference with a contractual relationship, a plaintiff must establish

> 1) that he had a contract with a third party, 2) that the defendants knowingly induced the third party to break the contract, 3) that the defendants' interference was improper in means or motive and 4) that [the plaintiff] was harmed by the interference.

Cachopa v. Town of Stoughton, 72 Mass. App. Ct. 657, 660 (2008).

Rapid AG alleges that Kachroo and Arise interfered with two different kinds of contractual relationships. First, it contends that Kachroo intentionally interfered with Rapid AG's contractual relationship with Adams and Galpin emanating from the Data Transfer Agreement. This argument has two ideations:

(1) Rapid AG asserts that Kachroo attempted to rescind the Data Transfer Agreement and transfer Rapid AG's intellectual property rights to Arise by initiating the Multilateral Settlement Agreement.  (Because Kachroo has not asserted the validity of such agreement, the Court's analysis will focus on the second ideation of the argument.)

(2) Rapid AG avers that Kachroo intentionally interfered with its relationship with Adams and Galpin by promising shares and official positions in Kachroo's new company, Arise, to induce them to rescind the Data Transfer Agreement.

Kachroo does not deny that she persuaded Adams and Galpin to agree to the rescission of the agreement.  Instead, she contends that the Data Transfer Agreement was voidable in the first place due to fraudulent misrepresentations made by Dr. Ruff which induced Adams and Galpin to sign the agreement.  The affidavit submitted by Adams does not, however, avow that she was defrauded but rather that she was entitled to rescind the agreement because Rapid AG failed to meet certain unspecified "underlying requirements" of the agreement which was therefore "not legally binding."  Furthermore, plaintiff has proffered evidence that Kachroo's allegations of fraud, which concern Rapid's intellectual property rights, are unfounded.  Thus, defendants have not alleged facts sufficient to prove that the Data Transfer Agreement was voidable.

Plaintiff, on the other hand, has shown that defendant Kachroo was wrongfully motivated by a desire to increase her ownership interest in Rapid AG.  It has therefore made a credible showing that defendants knowingly and improperly induced Adams and Galpin to breach the Data Transfer Agreement and that the breach, if consummated, would have caused the rescission of Rapid AG's intellectual property rights and harm to the plaintiff.  As such, plaintiff has shown a reasonable likelihood of success on the merits of this claim.

Second, plaintiff alleges that Kachroo has intentionally interfered with Rapid AG's contracts with third party vendors to conduct research in support of its application for FDA approval. Rapid AG proffers affidavits attesting to Kachroo's contact with those vendors, the fact that the vendors have suspended their performance of contracted work and the fact that they currently refuse to communicate with Rapid AG.  Because of that interference, which was perpetrated in support of Kachroo's goal of transferring Rapid AG's property and business relationships to Arise, Rapid AG asserts that its research in support of the IND application has now ceased, potentially jeopardizing the company's opportunity to gain FDA approval.

In response, Kachroo admits to having spoken with some of the third party vendors but denies having encouraged them to stop performance or to cut off contact with Rapid.  She asserts

-15-

that the companies 1) were already aware of the dispute between Rapid and Arise when she contacted them and 2) had made the decision to cease contact on their own.  She offers, however, no plausible explanation as to how the vendors were informed of the dispute other than by her.

Kachroo also alleges that Rapid AG's vendor contracts are voidable because they were based on fraudulent misrepresentations. She does not, however, explain what misrepresentations were made to the vendors or how they were dispositive.  Because Kachroo is unable plausibly to dispute the facts set forth by Rapid AG, plaintiff has demonstrated a reasonable likelihood of success on the merits on its second claim of intentional interference with contractual relations.

### b.  Intentional Interference with Advantageous Business Relations

To show intentional interference with advantageous business relations, a plaintiff must establish that

> 1) he had a business relationship for economic benefit with a third party, 2) the defendants knew of the relationship, 3) the defendants interfered with the relationship through improper motive or means and 4) the plaintiff's loss of advantage resulted directly from the defendant's conduct.

Kurker v. Hill, 44 Mass. App. Ct. 184, 191 (1998).

Although plaintiff presents the facts of this cause of action as a second ground for injunctive relief, it does not allege that defendants interfered with business relationships

-16-

that were likely to yield any economic benefit beyond Rapid AG's existing contracts. As such, plaintiff has failed to demonstrate a likelihood of success on the merits based on intentional interference with advantageous business relations.

### c.   Breach of Fiduciary Duty

Because Rapid AG is organized under the laws of Switzerland, Kachroo's fiduciary duty to the company is defined by Swiss law. As a member of the Board of Directors Kachroo owed Rapid AG, its shareholders and all company creditors a duty of care and loyalty. Schweizerisches Zivilgesetzbuch [ZGB] [Civil Code] Mar. 30, 1911, SR 220, art. 717 (Switz.). This duty requires that

> [t]he members of the board of directors and third
> parties engaged in managing the company's business
> must perform their duties with all due diligence and
> safeguard the interests of the company in good faith
> . . . [and that board members] afford the shareholders
> equal treatment in like circumstances.

Id.

Based on the facts alleged and supported by the affidavits and exhibits provided by plaintiff, Rapid AG has shown a likelihood of success in proving that Kachroo breached her fiduciary duty in a number of ways. For example, it has produced evidence that Kachroo's decision to put Rapid AG into bankruptcy was not in the company's best interest and therefore was a breach of her duty of loyalty. Plaintiff's allegation is

-17-

supported both by the fact that a court in Switzerland summarily removed the company from bankruptcy and by the affidavit of Kachroo's brother, the chairman of Rapid AG's creditors committee, who testified that Kachroo's decision to put the company into bankruptcy jeopardized its financial stability. Moreover, Kachroo did not obtain the legally-required shareholder approval to restructure the company. That failure also indicates a lack of diligence and due care in managing the company's business.

In response, Kachroo claims that she had a good faith belief at the time that a majority of shareholders supported her decision and that she relied on the opinions of several key advisors in making it. The opinions relied upon did not, however, necessarily support her actions. For instance, she claims that Robert Fremeau, the company's chief scientific officer, supported the restructuring. Fremeau specifically denies that claim in his affidavit, however. Kachroo cites correspondence from KPMG, the company auditor, warning that it would be forced to file an involuntary bankruptcy petition if the company did not quickly take remedial action on its own. She does not dispute, however, that the creditors committee had already formulated a plan to take necessary remedial action which Kachroo overruled in favor of bankruptcy. Once again, Kachroo's rebuttals fail to overcome Rapid AG's showing of a

reasonable likelihood of success on the merits of the subject claim.

### 2. Potential for Irreparable Injury

Irreparable injury is "a substantial injury that is not accurately measureable or adequately compensable by money damages." Ross-Simons of Warwick v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996). Plaintiffs alleging irreparable injury must show more than a "tenuous or overly speculative forecast of anticipated harm." Id. Examples of irreparable injuries include loss of incalculable revenue and harm to goodwill or reputation. Id. at 19-20. In the preliminary injunction context, the First Circuit Court of Appeals measures irreparable harm

> on a sliding scale, working in conjunction with a moving party's likelihood of success on the merits, such that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown.

Braintree Labs, 622 F.3d at 42-43 (internal quotation marks and citations omitted). The Court has already determined that plaintiff has a substantial likelihood of succeeding on the merits of its claims for intentional interference with a contractual relationship and breach of fiduciary duty. Rapid AG therefore has a lower threshold to overcome to establish irreparable harm.

Rapid AG alleges that Kachroo's interference with its contracts have prevented the company from continuing its

research in support of its application for FDA approval.
Because Peptide-T is considered an "orphan" drug, the first
company to gain FDA approval for use of the compound to treat
PML will enjoy seven years of exclusivity in marketing the
compound.  Plaintiff suggests that the time frame for FDA
approval of Peptide-T is therefore critical to the company's
financial well-being.  If another entity were to gain prior
approval, Rapid AG would be foreclosed from marketing the drug.

Furthermore, Rapid asserts that gaining FDA approval is
essential to attracting future investment in the company.
Because such prospective harm could not be remedied through the
collection of damages, the Court finds that Rapid AG has met the
reduced showing of irreparable harm required with respect to
defendants' interference with its contracts.

Plaintiff has not, however, linked its potential injury to
the putative transfer of assets and property.  Kachroo's
interference with Rapid's contractual relationships but not her
alleged misappropriation of property or assets appears to be the
cause of the interruption of Rapid's research on Peptide-T.
Thus, while defendant's purported misappropriation of such
assets likely was a violation of her fiduciary duty, plaintiff
has failed to demonstrate irreparable harm from that alleged
breach.

### 3. Remaining Factors

As discussed above, Rapid has demonstrated a potential for irreparable harm from the interference with its contracts in furtherance of its application for FDA approval.  Defendants, on the other hand, have made no representations that they would suffer harm from the imposition of a preliminary injunction. The balance of hardships clearly favors plaintiff.

To the extent that the public interest is implicated by this motion, it also supports a preliminary injunction.  The requested relief would allow Rapid to continue its research on Peptide-T with the goal of developing a potential treatment for patients suffering from PML.  Expediting the approval of such a treatment would promote the public good by benefiting those who are currently affected by the disease.

ORDER

For the forgoing reasons, defendants' motion for a stay (Docket No. 27) is **DENIED** and plaintiffs' motion for a preliminary injunction (Docket No. 24) is **ALLOWED, IN PART, AND DENIED, IN PART**.  Injunctive relief in the form of the preliminary injunction attached hereto will be entered.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 23 , 2015